UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DELTA-T CORPORATION,

                            Plaintiff,

v.                                     Action No. 3:09–CV–388

PACIFIC ETHANOL, INC.,

                            Defendant.

MEMORANDUM OPINION

I.  INTRODUCTION

      THIS MATTER is before the Court on related motions filed by plaintiff Delta-T Corporation (hereinafter "Delta-T") and defendant Pacific Ethanol, Inc. (hereinafter "PEI") regarding the disposition of Delta-T's underlying Complaint.  Delta-T has requested the entry of a default against PEI (Doc. No. 10) and moved for a default judgment (Doc. No. 4).  PEI has moved to dismiss Delta-T's Complaint and stay the matter pending arbitration (Doc. No. 7) and, in the alternative, sought an enlargement of the time under which it may file a response to Delta-T's Complaint (Doc. No. 5).  For the reasons stated below, Delta-T's Request for an Entry of Default and Motion for Default Judgment are DENIED and PEI's Motion to Dismiss and Alternative Motion to Stay Action Pending Arbitration is GRANTED.  The issue of an enlargement of time being moot, PEI's Motion for Extension of Time is DENIED.

## II. BACKGROUND

### A. Facts

This case arises out of the failure of a scheme to construct ethanol refineries. In late 2005 and early 2006, PEI entered into a series of contracts called Engineering, Procurement, and Technology Agreements (hereinafter "EPTs") with Delta-T. Under these agreements, Delta-T was obligated to provide engineering and procurement services to support the construction and startup of five PEI plants. PEI retained the right, which it exercised under each agreement, to assign the EPTs to five affiliate companies that were created to manage the projects. Each EPT contained a dispute resolution clause which stated that in the face of an unresolved dispute, either party could compel arbitration under the Construct Industry Rules of the American Arbitration Association.

In December 2007, Delta-T came to believe that the PEI affiliates to which the EPTs had been assigned would be unable to make payments which were about to become due. This led to the negotiation of a Term Sheet and Letter Agreement in early 2008, which modified certain provisions of the EPTs. When, on August 18, 2008, PEI's affiliates still had not made payment to Delta-T, Delta-T brought an action against both PEI and its affiliates (hereinafter, the "2008 Complaint") alleging breaches of contract (three counts) and breaches of agreement (two counts) and seeking indemnity for judgments paid to subcontractors on the project. See Delta-T Corporation v. Pacific Ethanol, Inc., et al., Civil Action No. 3:08-CV-524, Complaint, Doc. No. 1. PEI moved to dismiss the 2008 Complaint for lack of personal jurisdiction and, in the alternative, to dismiss and compel

arbitration. In January 2009, this Court declined to dismiss for lack of jurisdiction, but found that arbitration was required under the terms of the EPTs. See Civil Action No. 3:08-CV-524, Memorandum Opinion of January 7, 2009, Doc. No. 15.

Delta-T subsequently filed a Demand for Arbitration with the American Arbitration Association (hereinafter "AAA"). A preliminary hearing was held on February 6, 2009, but for reasons now in dispute, no hearings had taken place by May 17, 2009, when PEI's affiliates commenced bankruptcy proceedings under 11 U.S.C. § 101. This resulted in an automatic stay of all proceedings, which the AAA acknowledged on June 10, 2009. In a letter to both sides, the AAA indicated that the matter would be held in abeyance as to all claims until August 17, 2009, at which point the file would be closed in the absence of further communication from the parties. On August 24, 2009, the AAA closed the file. On January 21, 2010, PEI received a copy of a published notice of sale indicating that all of Delta-T's assets would be sold at auction on January 29, 2010. Delta-T subsequently announced, via its website, that it had ceased all operations and that its assets and technology had been acquired at public auction by another company.

B. Posture of Claim

Delta-T filed the present Complaint (hereinafter "2009 Complaint") on June 19, 2009, shortly after PEI's affiliates commenced their bankruptcy proceedings. In the 2009 Complaint, Delta-T repeats the six counts laid out in the 2008 Complaint and incorporates allegations regarding PEI's failure to participate in arbitration. As evidence of this failure, Delta-T points to PEI's alleged failure to pay a $975.00 "Neutral Compensation Deposit" to the AAA. Delta-T served the 2009 Complaint on July 13, 2009, and on July 15, 2009, the

bankrupt subsidiaries filed an Adversary Proceeding Complaint with the bankruptcy court, seeking to stay the instant litigation. The bankruptcy court granted the relief requested on August 6, 2009, staying both the arbitration and the action until September 21, 2009. As a result of mediation ordered by the bankruptcy court, Delta-T also agreed to release the PEI affiliates from the claims in the instant action and to stay those claims until December 31, 2009.

No additional filings were made in this matter until March 1, 2010, when Delta-T filed its Motion for a Default Judgment. PEI filed its Motion for Extension of Time and its Motion to Dismiss later that day. Delta-T filed its Request for Entry of Default on March 2, 2010. The parties were heard at an omnibus hearing on these matters on March 31, 2010.

### III. ANALYSIS

The issue around which all of these Motions turn is whether, given the current posture of the case, the arbitration clauses contained in the EPTs are still enforceable. This Court has already determined that arbitration clauses are generally valid and applicable to the underlying dispute. See Civ. No. 3:08-CV-524, Mem. Op. Of January 7, 2009, Doc. No. 15. Thus, the question now presented is whether PEI has waived or defaulted on its right to demand that these arbitration clauses be honored or otherwise committed some default which would bar their enforcement. See 9 U.S.C. § 3 (2010)("upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . [the court] shall on application of one of the parties stay the trial of such action until such arbitration has been had . . . providing the applicant for the stay is not in default in proceeding with such arbitration"). If the arbitration agreements are enforceable, then the

2009 Complaint must be dismissed and the action stayed.  See 9 U.S.C. § 4 (requiring a court to remand dispute for arbitration if valid agreement applies to claims);  see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resorts, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001)(dismissal of complaint appropriate where all claims subject to arbitration).

### A.  No Default or Waiver Bars Arbitration in this Matter.

The Fourth Circuit has found that the concepts of "default" and "waiver" have a distinct meaning under 9 U.S.C. § 3.  See In re Mercury Const. Corp., 656 F.2d 933, 939 (4th Cir. 1981).  The type of default which may bar enforcement of an arbitration clause and prevent a stay in litigation is narrowly defined, sparingly found, and, as the statute plainly states, must occur "in proceeding with . . . arbitration".  9 U.S.C. § 3 and Mercury, 656 F.2d at 939.  In short, it is not identical with a procedural default under the Rules of Civil Procedure.  The most obvious example of such a default would be if a party seeking dismissal or a stay had previously refused to participate in arbitration.  By contrast, a mere delay in seeking arbitration is not enough to constitute a default under § 3, rather "it is only when this delay results in actual prejudice that it may amount to 'default'".  Mercury, 656 F.2d at 939.   This prejudice may be said to arise when a party actively participates in a lawsuit or takes other action inconsistent with the right to arbitration (such as by seeking and receiving discovery) or when the process would be inequitable to one party because relevant evidence has been lost due to the delay of the other.  Id. at 939-40.  The inquiry which a district court may make to determine whether a default or waiver has occurred is necessarily limited, as compliance with the procedural requirements governing an arbitration itself is properly a matter for an arbiter to resolve.  See, Howsam v. Dean Witter

Reynolds, Inc., 537 U.S. 79, 81 (2002)(existence of time bar in arbitration rules is issue for arbiter to decide).

Delta-T suggests that PEI cannot now seek to enforce the arbitration clauses contained in the EPTs because PEI failed to "meaningfully participate" in arbitration of the claims raised in the 2008 Complaint and was thus in "default". As evidence of this, Delta-T points to PEI's failure to pay a $975 deposit to cover the arbiter's fees and its failure to schedule pre-arbitration hearing when its affiliates were commencing bankruptcy proceedings. These allegations, even if true, do not establish a refusal to participate in arbitration of which this Court may take notice. See Howsam, 537 U.S. at 81 (arbiter to judge compliance with own rules). Similarly, Delta-T suggests that PEI's failure to promptly file a motion to compel arbitration on the claims in the 2009 Complaint constituted a waiver of PEI's right to demand arbitration. However, there is no evidence that PEI actively participated in proceedings before this Court based on the 2009 Complaint prior to filing its Motion. Indeed, Delta-T has taken great pains to assert that PEI has not taken any actions regarding the pending claims. Moreover, there is no evidence that Delta-T has been significantly prejudiced by PEI's failure to file its Motion to Compel prior to March 1, 2010. See Mercury, 656 F.2d at 939 (default requires more than mere delay). While Delta-T suggests that it has been prejudiced insofar as it has been required to bear costs and fees related to its motions, these costs could easily have been avoided if it had simply notified the Court that the stay imposed by the bankruptcy court had expired and requested a new scheduling order. Moreover, the cost of filing these motions does not appear to be the type

of outcome oriented prejudice contemplated by Mercury. 656 F.2d at 940 (receipt of discovery not available in arbitration or loss of evidence).

In light of this, the Court finds that PEI's conduct in this venue does not constitute grounds for finding a waiver or a default on its right to arbitrate.

### B. PEI's Silence Did Not Constitute a Default Warranting Judgment

While it appears that the arbitration agreement is enforceable, there must still be a claim for the parties to arbitrate. Thus, the Court must determine whether any default by PEI on the 2009 Complaint compels a judgment in Delta-T's favor. For the reasons outlined below, the Court finds that any default PEI may have committed should be set aside.

Under Federal Rule of Civil Procedure 55, "when a party against whom a judgment or affirmative response is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). A default "judgment" may then be obtained by applying to the Court. Fed.R.Civ.P. 55(b)(2). A court may set aside an entry of default "for good cause", and a default judgment may be set aside for "excusable neglect" or any other basis allowed under Federal Rule of Civil Procedure 60, such as mistake, inadvertence, surprise, or excusable neglect. See Fed.R.Civ.P. 55© and 60(b)(1). This Court, following the Fourth Circuit's precedents, has long construed Rule 55 liberally and resolved any doubts regarding the propriety of granting a default judgment in favor of hearing a case on the merits. See Burton v. The TJX Companies, Inc., 2008 WL 1944033 *2 (E.D.Va. 2008) (citing Tolson v. Hodge, 411

7

F.2d 123, 130 (4th Cir. 1969).)[1]  When determining whether good cause exists to set aside an entry of default, a court must consider whether: 1) a defendant had a meritorious defense to the complaint's allegations, 2) the defendant acted with reasonable promptness to set aside the entry of default, 3) the defendant has a history of dilatory action in the current litigation; 4) the defendant–not his attorney–was responsible for the default; 5) the plaintiff was prejudiced by the defendant's delay; and 6) less drastic sanctions are available. See Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006); also Burton 2008 WL 1944033 *2.

In this case, Delta-T filed its Motion for a Default Judgment prior to seeking an entry of default against PEI.  However, by the time Delta-T's Request for Entry of Default was filed– the following day–PEI  had already filed a Motion seeking to dismiss Delta-T's 2009 Complaint and to stay the action pending arbitration.  These facts suggest a conclusion that the law compels: that good cause exists to set aside any default committed by PEI in failing to respond to Delta-T's 2009 Complaint after the expiration of the bankruptcy court's stay on December 31, 2009.[2]

First, while a meritorious defense is typically characterized as evidence which would permit a finder of fact to find for the defaulting party after trial, or which would establish a

---

[1] Nevertheless, the failure to request an entry of default prior to seeking a default judgment is an insubstantial procedural error that will not preclude the granting of a default judgment. See Town and Country Kids, Inc. v. Protected Venture Inv. Trust 3 1, Inc., 178 F.R.D. 453, 454 (E.D.Va. 1998).

[2] While Delta-T did not properly request an entry of default prior to moving for a default judgment, the Court shall excuse this omission.  See Town and Country Kids, Inc. v. Protected Venture Inv. Trust 3 1, Inc., 178 F.R.D. 453, 454 (E.D.Va. 1998).

valid counter claim, see Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988), given the clear federal policy in favor of arbitration, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)(federal law favors arbitration agreements), the valid and enforceable arbitration clause in the EPT's clearly presents a barrier to Delta-T's claims against PEI in this forum which is adequate to constitute a "defense". Cf. Burton 2008 WL 1944033 *3 (statute of limitations is "good cause" for setting aside default).[3] Thus, the Court finds that PEI has, and has raised, a meritorious defense to Delta-T's 2009 Complaint.

Second, as noted above, PEI acted with such promptness to cure it's default that it had sought dismissal or a stay before Delta-T had even properly requested an entry of default. Reasonable promptness must be determined "in light of the facts and circumstances of each occasion". United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) (curing deficiency upon notice may be sufficient); see also Wainwright's Vacations, LLC v. Pan Am. Airways Corp., 130 F.Supp.2d 712, 718 (D.Md. 2001)(reasonable promptness found, despite 32 day delay, where defaulting party had difficulty obtaining counsel). While it is true that PEI made no filings before this Court for two months following the expiration of the bankruptcy court's stay, in light of the commitment of this dispute to the AAA, the sale of Delta-T, and Delta-T's own failure notify the Court or PEI that the stay had expired, this was not unreasonable given the circumstances. Given the

---

[3]PEI has also advanced a number of defenses which go to the merits of Delta-T's claims which cannot readily be resolved on the pleadings now before the Court. (See Def.'s Opp. Pl.'s Mot Def. J. 16.)

9

speed with which PEI acted to cure this default once it was raised, the Court finds that Defendant acted with reasonable promptness.

Third, a party engages in dilatory behavior by stalling or ignoring a court's order to proceed. See McCain v. Educ. Credit Mgmt. Corp., 353 B.R. 452 (Bankr.E.D.Va. 2006) (failure of pro se plaintiff to submit exhibit lists and comply with pre-trial filing deadlines after instruction constituted dilatory behavior). While Delta-T has argued vigorously that PEI engaged in such behavior when it failed to proceed with arbitration during the pendency of the bankruptcy proceedings, Delta-T has presented no evidence that PEI refused to abide by any order from this Court, or the bankruptcy court. Conversely, PEI has presented evidence regarding the final communications from the AAA and the announcement of Delta-T's dissolution which support the conclusion that its failure to file an answer or motion before this Court, following the expiration of the stay, was not a deliberate attempt to circumvent the rules governing the proceeding.

Fourth, while PEI has not attempted to place blame for its silence on its counsel in this matter, it also does not appear to have engaged in any deliberate pattern of inaction that would warrant a particular sanction. See Payne, 439 F.3d at 204.

Fifth, the burden is on Delta-T to show that it has been prejudiced by PEI's delay. See Combustion Sys. Sales, Inc. v. Eastern Metal Prods. & Fabricators, Inc., 112 F.R.D. 685, 691 (M.D.N.C. 1986). Delta-T must show something more than mere delay to establish this prejudice, such as loss of evidence, greater difficulty in discovery or trial, or opportunity for fraud and collusion. Id. Delta-T has failed to make this showing. While it is certainly true that Delta-T has had to bear the cost of bringing this Motion, the Court finds

that given Delta-T's own failure to take any action with regard to this litigation, either before the AAA or this Court, prior to filing its Motion, this "prejudice" cannot be laid at the feet of PEI.

Sixth, while it is the conclusion of the Court that Delta-T is not entitled to its costs or fees on these Motion, the Court notes that Delta-T is seeking a final judgment on claims clearly committed to arbitration on the grounds that PEI had defaulted on a filing deadline in an action that had lain dormant for nearly one year. The sanction sought is clearly disproportionate to the scope of any default alleged and one which would reward the filing of a duplicative Complaint.

After considering the six relevant factors, it is the conclusion of the Court that good cause exists to set aside any default committed by PEI in failing to file a motion or answer following the expiration of the Bankruptcy Court's stay.

\*\*\*\*\*\*\*\*\*\*\*

Since this matter is clearly subject to arbitration, no default bars the enforcement of the arbitration clauses, and no default entitles Delta-T to a judgment in its favor, the Court also concludes that the 2009 Complaint must be dismissed and that this action must be stayed pending arbitration. See Choice Hotels Int'l, 252 F.3d at 709-10.

## IV. CONCLUSION

In light of the foregoing, Delta-T's Motion for a Default Judgment shall be DENIED, along with its Request for an Entry of Default. PEI's Motion to Dismiss and Alternative Motion to Stay Action Pending Arbitration shall be GRANTED. PEI's Motion for Extension of Time is moot and thus DENIED.

An appropriate Order shall issue.

>     /s/
>     James R. Spencer
>     Chief United States District Judge

ENTERED this  5th  day of May 2010